**Bradley Scott SAMDAHL, Petitioner and Appellee,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION DIRECTOR,** Respondent and Appellant.

Civ. No. 930279.

Supreme Court of North Dakota.

June 28, 1994.

Carmen G. Miller (argued), Asst. Atty. Gen., Attorney General's Office, Bismarck, for respondent and appellant.

Robert N. Lee (no appearance), Cavalier, for petitioner and appellee.

NEUMANN, Justice.

The North Dakota Department of Transportation Director appeals from a district court judgment reversing the Department of Transportation's administrative hearing officer's decision to suspend Bradley Scott Samdahl's driving privileges for 364 days. We reverse the district court judgment, and reinstate the hearing officer's decision.

Pembina County Deputy Sheriff Cal Cluchie arrested Samdahl on February 17, 1993, for driving while under the influence of intoxicating liquor in violation of NDCC § 39–08–01. The analytical report of the state toxicologist, dated February 23, 1993, reported an alcohol concentration of .24 percent. On March 31, 1993, Samdahl was given notice of the intent to suspend his driving privileges. Pursuant to NDCC § 39–20–03.1, a temporary operator's permit was issued to Samdahl, and his driver's license was taken from him.

Upon a timely request, an administrative hearing was held on May 3, 1993. At the administrative hearing, Samdahl objected to the jurisdiction of the Department of Transportation, due to the 36–day delay in issuing the Report and Notice. He also objected to admission of the Report and Notice into evidence. Noting both objections for the record, the hearing officer proceeded with the hearing and received the Report and Notice into evidence.

At the conclusion of the hearing, the hearing officer issued her findings of fact, conclusions of law, and decision. The hearing officer concluded that Officer Cluchie had reasonable grounds to believe Samdahl had been driving in violation of NDCC § 39–08–01, and that Samdahl was arrested, properly tested, and had an alcohol concentration of at least .10 percent. Her decision was to suspend his license for 364 days. She did not find any unreasonable delay in the service of the Report and Notice.

Samdahl appealed to the district court. The district court reversed the hearing officer's decision, finding:

"That Section 39–20–[0]3.1(1) of the North Dakota Century Code was not·complied with in the instant case; that this section is a mandatory provision; that extending the time in excess of thirty days is not a minor violation of the statute; and therefore the Department of Transportation is deprived of its jurisdiction."

This timely appeal followed.

The issue the Director brings on appeal is whether the Department of Transportation had jurisdiction to suspend Samdahl's driving privileges. The Director argues the agency had jurisdiction because there was no due process violation, and § 39–20–03.1 is not jurisdictional.

■■■■ The Administrative Agencies Practice Act governs appeals from district court judgments involving license suspensions under NDCC § 39–20–05. NDCC ch. 28–32; e.g., *Schwind v. Director, N.D. Dept. of Transp.*, 462 N.W.2d 147, 149 (N.D.1990). When reviewing drivers' license suspensions, we are confined to the record before the agency. *E.g., Kummer v. Backes*, 486 N.W.2d 252, 254 (N.D.1992). We do not review the decision of the district court. *E.g., id.* As we recently stated in *Sabinash v. Director of Depart. of Transp.*, 509 N.W.2d 61, 63 (N.D.1993), on appeal

"[w]e must affirm the Director's decision: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; (3) if the decision is supported by the conclusions of law; and (4) if the decision is in accordance with law."

We also consider whether the decision violates constitutional rights or whether it is in accordance with the law. NDCC § 28–32–19; *e.g., Schwind*, 462 N.W.2d at 149. This court exercises restraint when it reviews the findings of an administrative agency; we do not substitute our judgment for that of the agency, but instead determine whether a reasonable mind could have determined that the factual conclusions were proven by the weight of the evidence presented. *E.g., Ding v. Director, N.D. Dept. of Transp.*, 484 N.W.2d 496, 499 (N.D.1992).

The legislature has established what is required before the State can suspend a person's driving privileges. The version of § 39–20–03.1 in effect at the time of suspension of Samdahl's license provides in part:

"If a person submits to a test under section 39–20–01, 39–20–02, or 39–20–03 and the test shows that person to have a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle, the following procedures apply:

1. The law enforcement officer shall immediately take possession of the person's operator's license if it is then available and shall immediately issue to that person a temporary operator's permit if the person then has valid operating privileges, extending driving privileges for the next twenty-five days, or until earlier terminated by the decision of a hearing officer under section 39–20–05. The law enforcement officer shall sign and note the date on the temporary operator's permit. The temporary operator's permit serves as the commissioner's official notification to the person of the commissioner's intent to revoke, suspend, or deny driving privileges in this state.

\* \* \* \* \* \*

3. The law enforcement officer, within five days of the issuance of the temporary operator's permit, shall forward to the commissioner a certified written report in the form required by the commissioner and the person's operator's license taken under subsection 1 or 2. If the person was issued a temporary operator's permit because of the results of a test, the report must show that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance, that the person was lawfully arrested, that the person was tested for blood alcohol concentration under this chapter, and that the results of the test show that the person had a blood alcohol concentration of at

least ten one-hundredths of one percent by weight. In addition to the operator's license and report, the law enforcement officer shall forward to the commissioner a certified copy of the operational checklist and test records of a breath test and a copy of the certified copy of the analytical report for a blood, saliva, or urine test for all tests administered at the direction of the officer."

NDCC § 39–20–03.1 (1987 & Supp.)

At the administrative hearing, Samdahl objected to the proceedings, arguing that the hearing officer was without jurisdiction because "immediately" after receiving the toxicologist results, a police officer neither took possession of Samdahl's operator's license, nor issued him a temporary operator's permit as required under § 39–20–03.1. The hearing officer rejected this argument, and proceeded to suspend Samdahl's license. On appeal to the district court, the agency was overruled.

▮ The Director asserts that the language of § 39–20–03.1 regarding the giving of notice of intent to suspend is not jurisdictional. We agree. Although "[t]he jurisdiction of an administrative agency is dependent upon the terms of the statute and must meet at least the basic mandatory provisions of the statute before jurisdiction is established," the terms of the statute "must be construed logically so as not to produce an absurd result." *Schwind,* 462 N.W.2d at 150. When adherence to the letter of the law would cause an absurd result, we give effect to the legislative intent even though contrary to the letter of the law. *Id.*

▮ This case is very similar to *Schwind,* in which we held an absurd result would

occur if we required that the statute be followed to the letter. *Id.* "Section 39–20–03.1, NDCC, was enacted, in part, to help ensure that an individual who violated this chapter would not continue to drive." *Id.* Although the unexplained delay of more than one month between the testing of the blood and the giving of notice of intention to suspend driving privileges does not strictly comply with "the letter of the law,"[1] we seek to avoid absurd results. It would be an absurd result if, in the absence of any showing of harm or prejudice to Samdahl, we were to hold the officer's failure to strictly comply with the statute resulted in Samdahl retaining his driving privileges.[2]

The particular facts of this case do not raise due process concerns. This is not a case where the defendant was harmed or prejudiced by a time delay in notification. There is nothing in the record that suggests Samdahl even attempted to show prejudice due to the delay. Not only did Samdahl retain his driver's license until served with the temporary operator's permit, but neither party claims to have forgotten important elements of the event, nor does there appear to have been a loss of witnesses or any other detrimental effect. Additionally, there is absolutely no evidence of improper purpose on the part of law enforcement or the Department of Transportation.

The district court judgment is reversed, and the agency decision is reinstated.

VANDE WALLE, C.J., and SANDSTROM and MESCHKE, JJ., concur.

LEVINE, Justice, dissenting.

Because I believe that the command of NDCC § 39–20–03.1 that the officer "shall immediately issue" a temporary operator's

---

1. The words of our statutes are to be understood in their ordinary sense unless a contrary intention plainly appears, or unless otherwise explained. NDCC § 1–02–02. "Immediate" is defined as "at once; without delay; not deferred by any interval of time. In this sense, the word ... denotes that action is or must be taken either instantly or without any considerable loss of time." *Black's Law Dictionary* 749 (6th ed. 1990). *Black's* goes on to explain that immediacy is a "reasonable time in view of [the] particular facts and circumstances of" the case being considered. *Id.*

2. We are mindful that permitting Mr. Samdahl to retain his license and exercise unrestricted driving privileges for more than 30 days after his arrest for DUI in violation of NDCC § 39–08–01 may also be considered an absurd result. We are confident, however, that North Dakota peace officers will not consider this opinion an invitation to ignore the legislature's obvious intent that such matters normally be handled expeditiously.

permit to the driver, whether a jurisdictional or due process requirement, does not require a separate showing of harm or prejudice, I dissent.

To establish jurisdiction of the agency, the basic mandatory provisions of the statute conferring jurisdiction must be met. *Bosch v. Moore*, 517 N.W.2d 412, 413 (N.D.1994); *Schwind v. Director, N.D. Dep't of Transp.*, 462 N.W.2d 147, 150 (N.D.1990). We have held that some of the provisions of section 39–20–03.1 are basic and mandatory, and therefore jurisdictional. In *Bosch*, we held that the officer's failure to forward the results of all blood tests performed on the driver in violation of NDCC § 39–20–03.1(3) deprived the agency of authority to suspend the driver's license. *See also Schwind, supra* at 151 ["The prerequisite for the exercise of the Director's jurisdiction is the certified written report and test records of either breath, blood, saliva, or urine."]. In contrast, we held in *Schwind* that the officer's failure to forward the driver's license to the agency in violation of NDCC § 39–20–03.1(3) did not deprive the agency of jurisdiction. We explained that the transmittal of the blood-alcohol test records, not the driver's license, was the basic and mandatory provision of section 39–20–03.1(3). Therefore, while failure to forward the blood-alcohol test records would deprive the agency of jurisdiction, failure to forward the driver's license would not.

The provision in this case, that the officer shall immediately issue a temporary permit, is more akin to the transmittal of blood-alcohol test results than to the transmittal of the driver's license. First, in *Schwind*, we relied on the fact that the statute allowed for the possibility that the officer may not be able to take possession of or forward the driver's license. *Schwind, supra* at 150–51. Therefore, we inferred that the legislature would not have allowed for the officer's failure to forward the driver's license if that had been a prerequisite for the agency's exercise of its jurisdiction. Here, however, there is no legislative allowance for the possibility that the officer may not issue immediately a temporary permit to a driver with a valid license. Indeed, the statute expressly states that the temporary operator's permit serves as notice to the driver of intent to revoke, suspend, or deny driving privileges.[1] As the blood-alcohol test results are a prerequisite for exercise of the agency's jurisdiction, so is notice in the form of the immediate issuance of the temporary permit.

Second, the provision in this case is not solely for the benefit of the public. Although the primary purpose of NDCC ch. 39–20 is "to get the drinking driver off the highways," Minutes of the Senate Judiciary Committee Meeting on S.B. 2373 (Jan. 31, 1983), the legislature was also concerned that the law not be "slanted too much toward the [agency's] convenience." Report of the House Judiciary Committee on S.B. 2373 (March 15, 1983). In *Schwind*, we concluded that to hold that the officer's failure to forward the driver's license deprived the agency of jurisdiction would defeat the legislature's intent to protect the public from drunk drivers. *Schwind, supra* at 150. We did not find any legislative intent in that particular provision to benefit the driver. However, in *Bosch*, we implicitly found a legislative intent to protect procedurally the driver in the statutory requirement that the officer forward all blood-alcohol test records to the agency by ensuring that a hearing officer, not a law enforcement officer, would determine the admissibility and weight of the test results. That dual purpose, to protect the public generally from drunk drivers and to safeguard procedurally the driver's rights, led us to conclude that the provision in *Bosch* was basic and mandatory, unlike the provision in *Schwind*. Here, while the general purpose of the statute is to protect the public, *see Schwind, supra* at 150,

---

1. Section 39–20–03.1(1) says:

"The law enforcement officer shall immediately take possession of the person's operator's license if it is then available and *shall immediately issue to that person a temporary operator's permit* if the person then has valid operating privileges, extending driving privileges for the next twenty-five days, or until earlier terminated by the decision of a hearing officer under section 39–20–05. The law enforcement officer shall sign and note the date on the temporary operator's permit. *The temporary operator's permit serves as the director's official notification to the person of the director's intent to revoke, suspend, or deny driving privileges in this state.*" (Emphasis added.)

the more specific purpose of the provision at hand is to provide notice to the driver that administrative proceedings against her are beginning. Thus, the provision is basic and mandatory, and therefore jurisdictional.

Although I believe that the provision at issue is jurisdictional, contrary to the majority's conclusion, even under the majority's analysis I would affirm on the basis that the driver need not show harm or prejudice separate from a violation of the statute. The majority is correct, of course, in arguing that the legislature wanted to get drunk drivers off the roads quickly, but the important thing is that unlike the provision in *Schwind*, the provision here also protects the rights of the driver. The legislative command of "immediately" applies to the driver's rights as well. By saying that the officer "shall immediately issue" a temporary permit which serves as notice to the driver, the legislature has made a judgment that anything less than immediate issuance and notice is prejudicial to the driver. Because the legislature has made the judgment that immediate issuance, not issuance within a reasonable time (or some other language), is required, it is not up to us to soften that requirement effectively to mean, "Immediately, unless the driver cannot show positively any harm or prejudice from a delay, in which case any time is fine." Even ignoring the legislative intent to protect procedurally the driver, I would enforce the immediacy requirement of the statute to ensure diligent conduct of law enforcement and to avoid "systemic disregard of law." *Madison v. North Dakota Dep't of Transp.*, 503 N.W.2d 243, 246 (N.D.1993).

Lastly, I worry that the majority abuses the "absurd result" analysis of *Schwind*. In *Schwind*, we concluded that it would be an absurd result if violation of a provision which was not intended to safeguard the driver's rights, only to protect the public, resulted in a drunk driver retaining his driving privileges. Certainly we did not intend that *Schwind*'s analysis be stretched to hold that finding in favor of the driver on the basis of violation of a statutory provision is always an absurd result because the legislature intended to protect public safety.

I would affirm the district court's judgment reversing the hearing officer's decision.

