2004 ND 134

**Brian J. AAMODT, Petitioner and Appellee**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

**No. 20040056.**

Supreme Court of North Dakota.

June 30, 2004.

Ralph A. Vinje, Vinje Law Firm, Bismarck, N.D., for petitioner and appellee.

Andrew Moraghan, Assistant Attorney General, Office of the Attorney General, Bismarck, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1]   The North Dakota Department of Transportation appeals from a South Central Judicial District Court judgment reversing an administrative hearing officer's decision to suspend Brian Aamodt's driving privileges for 91 days.   The Department argues the district court erred in finding that because the arresting officer failed to list in the report and notice form reasonable grounds to believe Aamodt was in physical control of a moving vehicle, the Department had no authority to suspend Aamodt's driving privileges.   The Department also argues probable cause existed to arrest Aamodt for being in actual physical control of a moving vehicle and to believe Aamodt was under the influence of alcohol. We affirm, holding that the provision in N.D.C.C. § 39–20–03.1(3) requiring an officer to issue a certified written report showing reasonable grounds to believe the person was in actual physical control of a motor vehicle while under the influence of alcohol is a basic and mandatory provision.

I

[¶ 2]   On October 4, 2003, at approximately 12:44 a.m., Mandan Police Officers Tim Bleth and Kelly Dollinger observed Aamodt and Loren Smith get out of a taxicab and walk toward a white Ford pickup. The officers were in plain clothes in an unmarked vehicle in the parking lot of the Silver Dollar Bar. It appeared to the officers that Aamodt and Smith were intoxicated.   The officers observed Aamodt get into the pickup through the driver's door and start the engine.   The officers also observed Smith urinating on the ground near the rear of the pickup, and they approached him.   Officer Bleth, observing Aamodt exit the vehicle, approached him and asked for identification.

[¶ 3]   While talking with Aamodt, the officer observed his slurred speech, blood-

shot eyes, and the odor of alcohol. The officer asked Aamodt to submit to field tests and an S–D2 test, but Aamodt declined. The officer ultimately arrested Aamodt for being in actual physical control of a vehicle while under the influence of alcohol. Aamodt submitted to an Intoxilyzer test, and the results showed he had a blood alcohol level of .09 percent. After Aamodt was issued a temporary operator's permit and was notified of the Department's intent to suspend his driving privileges, he requested a hearing. A copy of the report and notice form was timely submitted to the Department.

[¶ 4] At the October 23, 2003, administrative hearing, Officer Bleth testified that when he observed Aamodt and Smith in the Silver Dollar parking lot, they appeared to be intoxicated, "because they walked with a stagger." When asked to describe exactly what he saw that he would describe as "a stagger," he explained that Aamodt and Smith were: "Crossing the feet over. You know, body swaying back and forth." He also testified there was "lighting in the area because the parking lot is lit up." He was asked how far away he was from Aamodt; however, his response was unclear. He stated, "We were maybe about 75 yards." He then explained, "Or no, actually it would be a lot closer, because we walked to them." The officer later testified they were about four times the length of the room away; however, there is nothing in the record to indicate how long the room was.

[¶ 5] The officer testified that after he approached Aamodt, he asked him how much he had had to drink and Aamodt said he had had a couple of beers. Aamodt also testified he had two or three beers that evening and had not eaten. The officer testified he asked Aamodt "if he felt that he was all right to drive," and Aamodt stated he was not going to drive. He

testified he asked Aamodt who was going to drive, and Aamodt stated his friend was. He testified that Aamodt said his friend told him just to start the vehicle, and so he did. He testified he asked Aamodt why they did not just take the taxi home, and Aamodt stated again that he was not going to drive.

[¶ 6] The officer testified he told Aamodt he was in actual physical control of the vehicle and Aamodt stated he did not move the vehicle. The officer testified he told him it did not matter. He explained he then asked Smith how he planned on getting home, and Smith stated he had no plans of driving. He testified that Smith was not able to say who was going to drive him. He testified he then asked Aamodt whether he would be willing to perform some field tests, and Aamodt said no. The officer testified that Aamodt said he was not going to drive and felt he did not have to take any tests. The officer testified, he explained to Aamodt that he was in actual physical control of a motor vehicle, and he asked him again if he would take some field tests. He testified that Aamodt asked to talk to an attorney. The officer testified that he told him he was not under arrest and that he asked him whether he would be willing to submit to an S–D2 test. He testified that Aamodt did not submit to the S–D2 test. The officer testified he then told Aamodt he was under arrest for actual physical control of a motor vehicle while under the influence of alcohol.

[¶ 7] Aamodt testified the officer took keys from his pocket after he had been handcuffed and the officer examined them to see whether any would fit the pickup. He testified there were no keys in the pickup's ignition. The officer testified that when Aamodt exited the vehicle, it was shut off. He testified he took keys out of Aamodt's pocket when he arrested him, but those keys were not for the pickup.

He testified he found the ignition key lying by the pedal when he searched the vehicle incident to arrest.

[¶ 8]   The officer testified that after the arrest, he informed Aamodt of the implied-consent law and asked him whether he would be willing to submit to a chemical test. He testified that Aamodt asked to talk to an attorney first. He testified that Aamodt spoke with an attorney and then stated he would be willing to take any test he wanted. The officer testified that an Intoxilyzer test was then administered.

[¶ 9]   At the hearing, Aamodt objected to the hearing, arguing that because the report turned in by the officer did not show reasonable grounds to believe Aamodt was in actual physical control of a motor vehicle while under the influence of alcohol, as required by N.D.C.C. § 39–20–03.1(3), the Department could not justify suspending his driving privileges. He argued the language in the statute is mandatory. The hearing officer overruled the objection, and the hearing continued. Aamodt also argued there was no probable cause to arrest. He argued that although the officer described staggering, it was dark at the time, the officer was far away in another vehicle, and staggering would be inconsistent with a .09 blood-alcohol level. The hearing officer concluded the police officer had a proper basis to approach Aamodt and had reasonable grounds to believe Aamodt was in physical control of a vehicle while under the influence of alcohol. He suspended Aamodt's driving privileges for 91 days.

[¶ 10]   Aamodt appealed the hearing officer's decision to the district court. On February 17, 2004, the district court entered a judgment reversing the hearing officer's decision. The district court found the report and notice of the Department's intent to suspend Aamodt's driving privileges that was submitted to the director of

the Department did not state, as required by law, reasonable grounds to believe Aamodt was in actual physical control of a motor vehicle while under the influence of alcohol. In its memorandum opinion the district court explained, "All Officer Bleth checked in the box for the 'Officer's Statement of Probable Cause' was 'already stopped' and 'odor of alcoholic beverage.' No explanation was submitted on the Report and Notice form by Officer Bleth." The district court explained that probable cause is a fundamental reason for making an arrest and that failing to "even minimally state the officer's probable cause" deprived the Department of authority to suspend Aamodt's driving privileges.

[¶ 11]   Aamodt timely requested a hearing under N.D.C.C. § 39–20–05. The hearing officer had jurisdiction under N.D.C.C. § 39–20–05. The notice of appeal from the administrative agency decision to the district court was properly filed within seven days under N.D.C.C. § 39–20–06. The district court had jurisdiction under N.D.C.C. § 39–20–06. The Department filed, under N.D.C.C. § 28–32–49, a timely notice of appeal from the district court judgment. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–32–49.

II

[¶ 12]   Our review of an administrative suspension of a person's license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Dettler v. Sprynczynatyk*, 2004 ND 54, ¶ 10, 676 N.W.2d 799. "This Court exercises a limited review in appeals involving drivers' license suspensions or revocations." *Henderson v. Director, N.D. Department of Transportation*, 2002 ND 44, ¶ 6, 640 N.W.2d 714. "On appeal, we review the administrative agency's decision and give deference to the administrative agency's

findings." *Johnson v. N.D. Department of Transportation*, 2004 ND 59, ¶ 8, 676 N.W.2d 807. We will not substitute our judgment for that of the agency or make independent findings. *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 7, 663 N.W.2d 161. We instead determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. *Id.; Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979). We defer to the hearing officer's opportunity to judge the credibility of witnesses. *Dettler*, at ¶ 10. If sound, the district court's analysis is entitled to respect. *Id.* "[W]hether the facts meet the legal standard, rising to the level of probable cause or reasonable and articulable suspicion, is a question of law fully reviewable on appeal." *Id.*

[¶ 13] We affirm the agency's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently ex-

plain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

### III

[¶ 14] The Department argues the district court erred in concluding the Department had no authority to suspend Aamodt's driving privileges because the arresting officer failed to list on the report and notice form reasonable grounds to believe Aamodt was in physical control of a moving vehicle. Section 39–20–03.1(3), N.D.C.C., requires the officer to "forward to the director a certified written report ... show[ing] that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while [under the influence of alcohol]."

The interpretation of a statute is a question of law. *Erickson v. Director, N.D. D.O.T.*, 507 N.W.2d 537, 539 (N.D. 1993). When an appeal involves a conclusion of law by an administrative agency, the agency's order must be in accordance with the law. *Bieber v. N.D. Dept. of Transp. Director*, 509 N.W.2d 64, 67 (N.D.1993); N.D.C.C. 28–32–19(1). *Maher v. N.D. Department of Transportation*, 539 N.W.2d 300, 302 (N.D.1995). Reasonable grounds are the same as probable cause. *Moran v. N.D. Department of Transportation*, 543 N.W.2d 767, 769 (N.D. 1996).

[¶ 15] The Department's authority to suspend a person's license is given by statute and is dependent upon the terms of the statute. The Department must meet the basic and mandatory provisions of the statute to have authority to suspend a person's driving privileges. *Schwind v. Director, N.D. Department of Transporta-*

*tion,* 462 N.W.2d 147, 150 (N.D.1990). In this case, the certified written report, which is the Report and Notice Form, stated the probable cause was an "odor of alcoholic beverage." The Department concedes this is insufficient to show probable cause, but argues that failure to comply with the statutory requirement should not deprive it of authority to suspend Aamodt's driving privileges. At issue in this case is whether this provision of the statute is a basic and mandatory provision.

[¶ 16] This Court has previously discussed whether certain provisions in N.D.C.C. § 39–20–03.1 are basic and mandatory provisions that require compliance before the Department is authorized to suspend a person's driving privileges. In *Schwind v. Director, N.D. Department of Transportation,* 462 N.W.2d 147, 150 (N.D. 1990), and in *Samdahl v. N.D. Department of Transportation Director,* 518 N.W.2d 714, 717 (N.D.1994), this Court concluded the statutory provisions in question were not mandatory, because requiring compliance would lead to an absurd result.

[¶ 17] In *Schwind,* this Court held that although section 39–20–03.1, N.D.C.C., requires an officer to forward an operator's license to the Department, the failure to do so did not destroy the Department's authority to suspend a violator's driving privileges. This Court held that a contrary holding would defeat the legislature's intent to protect the public from potential hazards posed by intoxicated drivers. *Schwind,* 462 N.W.2d at 150–51.

[¶ 18] Similarly, in *Samdahl v. N.D. Department of Transportation Director,* 518 N.W.2d 714, 717 (N.D.1994), this Court held that although section 39–20–03.1, N.D.C.C., requires the Department to immediately issue a temporary permit, its failure to have done so for over a month did not deprive it of its authority to suspend a person's driving privileges. In this

case, Samdahl remained in possession of his driver's license until the temporary permit was issued. Relying on *Schwind,* this Court concluded that adhering to the letter of the law would produce an absurd result, absent any showing of harm, because N.D.C.C. § 39–20–03.1 was enacted, in part, to help ensure that an individual who violated this chapter would not continue to drive.

[¶ 19] This Court has also held that failure to follow the statutory requirement of issuing a valid temporary permit does not deprive the Department of its authority to suspend a person's driving privileges. *See Sabinash v. Director of the Department of Transportation,* 509 N.W.2d 61, 64 (N.D.1993).

[¶ 20] In *Bosch v. Moore,* 517 N.W.2d 412, 413 (N.D.1994), this Court held that an officer's failure to submit an Intoxilyzer test record, as required by section 39–20–03.1(3), deprived the Department of its authority to suspend driving privileges. This Court held:

> The statute's command that all tests be forwarded to DOT is basic and mandatory. It precludes the officer's exercise of choice and requires the transmittal of "all tests." The legislature has made it the hearing officer's domain, not the officer's, to judge the foundational facts for the admissibility of test results and the weight to be given to each of those results.

*Id.*

[¶ 21] The Department argues this Court should follow *Schwind* and *Samdahl* and conclude that the statutory provision at issue is not a basic and mandatory provision. It argues that unlike *Bosch,* in which the test results were never admitted into evidence, the evidence of probable cause omitted from the report and notice form was provided during the hearing

through the officer's testimony. The Department also argues the provision should not be found mandatory, because the report and notice form is not required to be issued to the arrestee.

[¶ 22] We conclude the statutory provision in question is more like the provision in *Bosch* than the provisions in *Schwind* and *Samdahl*. If the statutory provisions in *Schwind* and *Samdahl* are not met, the Department's authority is not affected by its not taking the license prior to the hearing or by its not issuing a temporary license. These details are not important in determining whether a driver's license can be suspended, and they are not considered by the Department when making its determination.

■■■ [¶ 23] The statutory provision in *Bosch*, on the other hand, is a predicate to suspending a person's driving privileges, and it is important to the Department that the provision be followed. When determining whether to suspend a person's driving privileges, the Department must determine whether there were reasonable grounds to believe the person was driving or was in actual physical control of a vehicle while under the influence of alcohol, whether the person was properly tested, and whether the person's blood-alcohol level exceeded the legal limit. *See* N.D.C.C. § 39–20–05. The statutory provision requiring reasonable grounds, like the statutory provision in *Bosch* concerning test results, involves requirements that are material to the Department's decision to suspend a person's driving privileges and are predicates to the Department's acting.

[¶ 24] Unlike in *Schwind* and *Samdahl*, requiring compliance by the officer and the Department in this case does not produce an absurd result in light of the legislature's intent. Although section 39–20–03.1 was enacted, in part, to help prevent those who had violated the statute from continu-

ing to drive, keeping drunk drivers off the roads was not the only concern. The legislature was concerned that the law not be "slanted too much toward the [agency's] convenience," *Samdahl v. N.D. Department of Transportation Director*, 518 N.W.2d 714, 718 (N.D.1994) (Levine, J., dissenting) (quoting *Report of the House Judiciary Committee on S.B. 2373* (March 15, 1983)), and that the officer be able to articulate probable cause before taking a license. The legislature heard testimony about the concern that this bill would punish those who did not need to be punished. *Hearing on S.B. 2373 before the House Judiciary Committee*, 48th N.D. Legis. Sess. (March 2, 1983) (testimony of Orell Schmitz of the North Dakota Trial Lawyers Association).

■■■ [¶ 25] Driving privileges cannot be taken away without some basis. Requiring reasonable grounds before taking away a person's driving privileges ensures the law is not too slanted in favor of the Department and protects those who should not be punished. Without a finding of probable cause, there is no basis for taking away a person's driving privileges. Aamodt was entitled to know what the officer was relying on.

[¶ 26] We conclude the statutory provision at issue is a basic and mandatory provision and therefore the Department had no authority to suspend Aamodt's driving privileges.

IV

[¶ 27] The Department also argues the hearing officer did not err in finding probable cause existed to arrest Aamodt for being in actual physical control of a moving vehicle while under the influence of alcohol. Because we conclude the statutory provision in section 39–20–03.1(3) is a

316

basic and mandatory provision and the Department had no authority to suspend Aamodt's driving privileges, we do not need to consider this argument.

## V

[¶ 28]   We affirm the district court's decision finding the Department had no authority to suspend Aamodt's driving privileges.

[¶ 29] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.