2005 ND 80

**Dean Arlan JORGENSEN, Petitioner and Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.**

No. 20040338.

Supreme Court of North Dakota.

April 26, 2005.

Chad R. McCabe, Vinje Law Firm, Bismarck, ND, for petitioner and appellant.

Todd Adam Sattler, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for respondent and appellee.

SANDSTROM, Justice.

[¶ 1] Dean Jorgensen appealed a district court order and judgment affirming a North Dakota Department of Transportation ("Department") hearing officer's decision suspending Jorgensen's driving privileges. We reverse.

I

[¶ 2] On June 25, 2004, Burleigh County Deputy Sheriff James Hulm stopped Jorgensen, administered field sobriety tests, arrested Jorgensen, and advised him he would be charged with the offense of driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor or drugs. Jorgensen provided a blood specimen for testing his blood alcohol content. An analytical report dated "07/06/04" and signed by the analyst indicated an "Alcohol Concentration of *0.19 %* by weight."

[¶ 3] As required by N.D.C.C. § 39–02–03.1, a report and notice form was sent to the Director of the Department. The report and notice form certified by Hulm on July 16, 2004, contains an officer's statement of probable cause completed by Hulm. Although the report and notice form contains a blank space for recording the test result of Jorgensen's blood specimen, Hulm did not record the results of a chemical test of Jorgensen's blood. Jorgensen requested and received a hearing. Jorgensen unsuccessfully moved for dismissal on the ground the Department lacked jurisdiction because the arresting officer's report and notice form did not list test results of any chemical tests. Hulm testified Jorgensen was given the blood test results on July 18, 2004. Hulm testified "a copy of that Report and Notice [was] submitted to the Department of Transportation within five days of the issuance of a temporary permit." Hulm testified that his report did not show the test results because of "an oversight by myself due to the fact that this was the actual first Report and Notice I have ever filled out and completed."

[¶ 4] The hearing officer found, among other things:

Neither Deputy Hulm nor anyone else entered the blood test results into the test results box on the Report & Notice form. When a Report & Notice form was issued to Mr. Jorgensen, Mr. Jorgensen was also provided with a copy of the analytical report for the blood sample. When a copy of the Report & Notice form was submitted to NDDOT, a copy of the analytical report for the blood sample was also submitted to NDDOT. The analytical report shows the results of the testing for alcohol concentration.

The hearing officer concluded, among other things:

Given that a copy of the analytical report showing the blood test results accompanied the Report & Notice form, the failure to enter the blood test results into the test results box on the Report & Notice form is not jurisdictional. When considered together, the information on the Report & Notice form and the information on the analytical report meet the requirements of NDCC 39–20–03.1.

The hearing officer suspended Jorgensen's driving privileges for two years.

[¶ 5]  Jorgensen appealed to the district court, which affirmed the hearing officer's decision. Jorgensen then appealed to this Court.

[¶ 6]  The hearing officer had jurisdiction under N.D.C.C. § 39–20–05. Jorgensen's appeal to the district court was timely under N.D.C.C. § 39–20–06. The district court had jurisdiction under N.D.C.C. § 39–20–06. Jorgensen's appeal from the district court judgment was timely under N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–32–49.

II

■■■■ [¶ 7]  Jorgensen has raised the following issue on appeal:

The Department lacked jurisdiction to suspend Jorgensen's driving privileges because the Report and Notice did not indicate any test results, as required by N.D.C.C. § 39–20–03.1(3), a basic and mandatory provision which requires the officer to "forward to the director a certified written report ... show[ing] that ... the results of the test show that the person had an alcohol concentration of at least eight one-hundredths of one percent by weight."

Jorgensen stated in his brief that only a question of law is involved: "The facts in this case are undisputed, and the only issue is the interpretation of N.D.C.C. § 39–20–03.1, in conjunction with applicable facts at hand." "The interpretation of a statute is a question of law, which is fully reviewable on appeal." *Larsen v. North Dakota Dep't of Transp.*, 2005 ND 51, ¶ 5, 693 N.W.2d 39.

[¶ 8]  Section 39–20–03.1, N.D.C.C., provides, in part:

If a person submits to a test under section 39–20–01, 39–20–02, or 39–20–03 and the test shows that person to have an alcohol concentration of at least eight one-hundredths of one percent by weight ... the following procedures apply:

. . . .

3.  The law enforcement officer, within five days of the issuance of the temporary operator's permit, shall forward to the director a certified written report in the form required by the director and the person's operator's license taken under subsection 1 or 2. If the person was issued a temporary operator's permit because of the results of a test, the report must show that the officer had reasonable grounds to believe the person had been driving or was

in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance, that the person was lawfully arrested, that the person was tested for alcohol concentration under this chapter, and that the results of the test show that the person had an alcohol concentration of at least eight one-hundredths of one percent by weight. . . . In addition to the operator's license and report, the law enforcement officer shall forward to the director a certified copy of the operational checklist and test records of a breath test and a copy of the certified copy of the analytical report for a blood, saliva, or urine test for all tests administered at the direction of the officer.

Section 39–20–05(1), N.D.C.C., provides drivers an opportunity for a hearing.

[¶ 9] In *Ding v. Director, North Dakota Dep't of Transp.*, 484 N.W.2d 496 (N.D. 1992), an officer completed and signed a report and notice on April 25, 1991, before receiving the result of a blood test. When the officer later received the test result, "he inserted the figure in the designated blank on the form he had previously signed" and issued a temporary operator's permit. *Id.* at 498. This Court disagreed with Ding's argument "that because the Report and Notice Form was not complete when Officer Stepp signed it, it could not provide jurisdiction to the Director under North Dakota law." *Id.* at 499. This Court "agree[d] with the hearing officer's determination that the information required under the statute was provided to the Director," and held that the arresting officer "substantially complied with the requirements of the statute when he inserted the blood analysis result on the report he had previously certified." *Id.* at 501.

[¶ 10] In *Aamodt v. North Dakota Dep't of Transp.*, 2004 ND 134, ¶ 14, 682 N.W.2d 308, the law enforcement officer did not list on the report and notice form reasonable grounds to believe Aamodt was in physical control of a motor vehicle, as specified in N.D.C.C. § 39–20–03.1(3). We said:

> The Department's authority to suspend a person's license is given by statute and is dependent upon the terms of the statute. The Department must meet the basic and mandatory provisions of the statute to have authority to suspend a person's driving privileges. . . . At issue in this case is whether this provision of the statute is a basic and mandatory provision.

*Id.* at ¶ 15. We further said:

> Driving privileges cannot be taken away without some basis. Requiring reasonable grounds before taking away a person's driving privileges ensures the law is not too slanted in favor of the Department and protects those who should not be punished. Without a finding of probable cause, there is no basis for taking away a person's driving privileges. Aamodt was entitled to know what the officer was relying on.

*Id.* at ¶ 25. We concluded the statutory provision in N.D.C.C. § 39–20–03.1(3) requiring that the arresting officer's certified report "must show that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance," is "a basic and mandatory provision and therefore the Department had no authority to suspend Aamodt's driving privileges." *Id.* at ¶ 26.

[¶ 11] Essentially, Jorgensen urges that the provision in N.D.C.C. § 39–20–03.1(3), specifying that when a driver has been tested for blood alcohol content, the

arresting officer's certified report "must show ... that the results of the test show that the person had an alcohol concentration of at least eight one-hundredths of one percent by weight" is, like the "reasonable grounds" provision, "a basic and mandatory provision." *Aamodt*, 2004 ND 134, ¶ 26, 682 N.W.2d 308. Jorgensen therefore argues that noncompliance with that provision deprives the Department of authority to suspend his driving privileges.

[¶ 12] In one sentence in N.D.C.C. § 39–20–03.1(3), the legislature has required a law enforcement officer to show in the report sent to the Department (1) "reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance"; (2) "the person was lawfully arrested"; (3) "the person was tested for alcohol concentration"; and (4) "the results of the test." A properly completed report meeting "the basic and mandatory provisions of the statute," *Aamodt*, 2004 ND 134, ¶ 15, 682 N.W.2d 308, along with the other matters required by the statute, is intended to give the Department the authority to suspend a driver's license and to provide a driver the means "to know what the officer was relying on," *id.* at ¶ 25. Here, like in *Aamodt*, the information required to be included in the officer's report was never included in the report, unlike the case in *Ding*, 484 N.W.2d 496, where the required information was included before the report was sent to the department or provided to the driver.

[¶ 13] Section 39–20–03.1, N.D.C.C., reflects a legislative intent to remove drunk drivers from the roads without slanting the law too much toward the Department's convenience. *Aamodt*, 2004 ND 134, ¶ 24, 682 N.W.2d 308. Section 39–20–05(1), N.D.C.C., gives a driver only a short time—ten days—after the issuance of a temporary operator's permit within which to request a hearing to challenge the suspension of his or her driving privileges. Thus, in determining whether to request a hearing, it is important that a driver facing the loss of driving privileges be able to quickly, conveniently, and certainly know what the officer is relying on. That information will be more quickly, conveniently, and certainly conveyed to the driver by inserting in the appropriate blank space on the report and notice form the results of the test than by giving the driver a copy of the analytical report of the analysis of the blood sample tested, which may well be confusing to one unacquainted with such documents. The legislature's intent will be best fulfilled by a bright-line requirement that the report and notice form contain the test result, as specified in N.D.C.C. § 39–20–03.1(3). We conclude that inclusion of the test result in the officer's certified report to the Department is a basic and mandatory provision of the statute, without which the Department may not suspend a person's driving privileges.

III

[¶ 14] Reversed.

[¶ 15] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

[¶ 16] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.