2012 ND 77

**Paul Alfred SCHOCK, Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellee.**

**No. 20110254.**

Supreme Court of North Dakota.

April 10, 2012.

Rehearing Denied May 3, 2012.

Danny L. Herbel (on brief), Bismarck, N.D., for appellant.

Michael T. Pitcher (on brief), Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for appellee.

SANDSTROM, Justice.

[¶ 1] Paul Schock appeals from a district court judgment affirming an administrative order suspending his driver's license for 180 days for driving a vehicle under the influence of intoxicating liquor. We affirm the judgment, concluding a reasoning mind reasonably could have concluded Schock provided a breath sample within two hours of driving a motor vehicle. We decline to grant his request for attorney's fees and costs under N.D.C.C. § 28–32–50.

I

[¶ 2] On March 13, 2011, a Beulah police officer stopped Schock for a traffic violation at 12:54 a.m. The officer smelled an odor of alcohol on Schock and asked him to exit his vehicle. The officer administered three field sobriety tests, and after Schock failed the tests, the officer arrested him for driving a vehicle while under the influence of intoxicating liquor. The officer brought Schock to the Mercer County Sheriff's office in Stanton, North Dakota, where a breath test was administered with an Intoxilyzer 8000. A printout from the breath test stated Schock began the test at 1:56 a.m. on March 13, 2011, and provided two breath samples—the first at 3:01 a.m. and the second at 3:07 a.m. The lowest test result showed Schock had a blood-alcohol concentration of 0.184 percent by weight. As a result, the officer issued Schock a temporary operator's permit under N.D.C.C. § 39–20–03.1, which notified Schock of the director of the North Dakota Department of Transportation's intent to suspend Schock's driving privileges.

[¶ 3] Schock requested a hearing on the intended administrative sanction, and on April 8, 2011, a hearing officer conducted an administrative hearing. At the hearing, the police officer testified as the Department's only witness, and Schock did not call any witnesses. The hearing officer received various exhibits into the record. Schock objected to the introduction of exhibits pertaining to the Intoxilyzer 8000 test results and the "report and notice form" completed by the police officer after he administered the breath test, arguing the Department lacked foundation to admit the results of the Intoxilyzer 8000 test and the Department had not presented sufficient testimony to establish the validity of the test or whether it was administered according to the approved method. The hearing officer admitted both exhibits into evidence, noting Schock's objection for the record.

[¶ 4] During closing arguments, Schock argued the record did not contain sufficient evidence that he took the breath test within two hours of driving a motor vehicle. He argued the only evidence admitted at the hearing showed the breath test occurred more than two hours after he drove a motor vehicle.

[¶ 5] In written findings of fact, the hearing officer found that daylight saving time took effect on March 13, 2011, at 2:00 a.m. and that the police officer administered the breath test within two hours of stopping Schock for a traffic violation. As a result, the hearing officer concluded the test results warranted a suspension of Schock's driving privileges for 180 days. The hearing officer's written decision was signed and dated on April 8, 2011, and the hearing officer mailed the decision to Schock on April 11, 2011, three days after the administrative hearing.

[¶ 6] Schock appealed the hearing officer's decision to the district court, arguing there was no evidence presented at the administrative hearing showing Officer Hirchert administered the breath test within two hours after Schock drove a motor vehicle, and the hearing officer did not "immediately" issue a decision, as required under N.D.C.C. § 39–20–05(5).

[¶ 7] The district court affirmed the hearing officer's decision, concluding the hearing officer's findings of fact were "reasonably based upon the available evidence," and the hearing officer "orally inform[ed Schock] of his findings and conclusions at the completion of the hearing." The district court found persuasive the Department's argument that a hearing officer may take judicial notice of daylight saving time and that the Chemical Test Operator Manual for the Intoxilyzer 8000 states the machine automatically accounts for daylight saving time and adjusts its times accordingly.

[¶ 8] Schock asked the district court to reconsider its decision, arguing that except for the report and notice form, there was no other evidence admitted at the administrative hearing to show when he drove the motor vehicle or when he took the breath test. He argued the Department did not offer, admit, or make part of the record the Chemical Test Operator Manual, and the district court should not have considered evidence not made part of the record at the administrative hearing. He also argued the hearing officer did not orally inform him of the findings of fact and conclusions of law at the completion of the hearing, which the Department conceded. The district court denied Schock's motion for reconsideration.

[¶ 9] Schock timely requested an administrative hearing under N.D.C.C. § 39–20–05. The hearing officer had jurisdiction under N.D.C.C. § 39–20–05. Under N.D.C.C. § 39–20–06, Schock timely appealed his license suspension to the district court. The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 39–20–06. Schock timely appealed the district court's decision to this Court under N.D.C.C. § 28–32–49. We have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

II

[¶ 10] Schock argues there was no evidence presented at the administrative hearing showing the police officer administered the breath test within two hours after Schock drove a motor vehicle. He also argues the hearing officer failed to issue a decision "immediately" after the hearing, and the hearing officer's decision was without substantial justification, entitling him to recover attorney's fees and costs.

■ [¶ 11] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs our review of an administrative decision to suspend or revoke a driver's license. *Erickson v. Dir., N.D. Department of Transportation*, 507 N.W.2d 537, 539 (N.D.1993). Under N.D.C.C. § 28–32–49, we review an appeal from a district court judgment in an administrative appeal in the same manner as allowed under N.D.C.C. § 28–32–46, which requires a district court to affirm an order of an administrative agency unless it finds:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 12] We review "the record of the administrative agency as a basis for [our] decision rather than the district court decision." *Lamb v. Moore*, 539 N.W.2d 862, 863 (N.D.1995). We do not make independent findings of fact or substitute our judgment for that of the agency, but rather only determine whether a reasoning mind reasonably could have concluded the findings reached were supported by the weight of the evidence from the entire record. *Aamodt v. N.D. Department of Transportation*, 2004 ND 134, ¶ 12, 682 N.W.2d 308. "We defer to the hearing officer's opportunity to judge the credibility of witnesses." *Id.* "Whether the facts meet the legal standard, rising to the level of probable cause or reasonable and articulable suspicion, is a question of law fully reviewable on appeal." *Id.* (quoting *Dettler v. Sprynczynatyk*, 2004 ND 54, ¶ 10, 676 N.W.2d 799).

A

[¶ 13] Schock argues there was no evidence presented at the administrative hearing showing the police officer administered the breath test within two hours after Schock drove a motor vehicle.

[¶ 14] The Department may impose an administrative sanction against a driver if "test results show that the arrested person was driving or in physical control of a vehicle while having an alcohol concentration of at least eight one-hundredths of one percent by weight ... at the time of the performance of a test within two hours after driving or being in physical control of a motor vehicle." N.D.C.C. § 39–20–04.1(1).

[¶ 15] Schock contends no evidence was presented during the administrative hearing to establish that daylight saving time affected the time of the breath test. Instead, he argues, the hearing officer admitted as evidence the Department's report and notice form, which is admissible as prima facie evidence of its contents once it is forwarded to the Department director. *Maher v. N.D. Department of Transportation*, 539 N.W.2d 300, 303 (N.D.1995); *Pavek v. Moore*, 1997 ND 77, ¶ 8, 562 N.W.2d 574. The report and notice form showed the police officer stopped Schock's vehicle at 12:54 a.m. on March 13, 2011, and obtained a breath sample from him at 3:07 a.m. that day. Schock argues the hearing officer should have considered only the evidence admitted during the hearing in making his decision. Schock also argues the district court should not have considered the Department's post-hearing references to a Chemical Test Operator Manual that was not offered, admitted, or made part of the record under N.D.C.C. § 28–32–24(2), which provides, in part: "No information or evidence except that which has been offered, admitted, and made a part of the official record of the proceeding shall be considered by the administrative agency." The Chemical Test Operator Manual states that the date and time on the Intoxilyzer 8000 change automatically at the beginning and end of daylight saving time.

[¶ 16] The Department responds the hearing officer properly took notice of the change to daylight saving time. The Department asserts the police officer stopped Schock at 12:54 a.m., arrested him at 1:19 a.m., started the calibration of the breath test at 1:56 a.m., and four minutes later the clock changed from 2:00 a.m. to 3:00 a.m. because of daylight saving time, resulting in Schock's submitting his first breath sample at 3:01 a.m. and a second sample at 3:07 a.m.

[¶ 17] In written findings of fact, the hearing officer found that "daylight saving time took effect at 2:00 a.m. on March 13, 2011. See NDCC 28–32–24(7)." Section 28–32–24(7), N.D.C.C., provides: "Official notice may be taken of any facts that could be judicially noticed in the courts of this state. Additionally, official notice may be taken of any facts as authorized in agency rules."

[¶ 18] Because we review "the record of the administrative agency as a basis for [our] decision rather than the district court decision," *Lamb*, 539 N.W.2d at 863, we need not address whether the district court considered evidence not made part of the record at the administrative hearing.

[¶ 19] A review of the record from the administrative hearing confirms Schock's contention that the hearing officer did not mention daylight saving time until he made his decision after the hearing. The hearing officer, however, can draw reasonable inferences from the evidence. *Geiger v. Hjelle*, 396 N.W.2d 302, 303 (N.D.1986). Common sense and experience permit a hearing officer to aid in drawing inferences from the evidence presented. *Nelson v. Dir., N.D. Department of Transportation*, 1997 ND 81, ¶ 11, 562 N.W.2d 562.

[¶ 20] The hearing officer could have properly inferred from the evidence presented that the police officer administered the breath test within two hours of Schock's driving a motor vehicle because daylight saving time took effect at 2:00 a.m. on March 13, 2011. The evidence presented at the hearing showed that the police officer stopped Schock's vehicle at 12:54 a.m. on March 13, 2011, and began to administer the breath test at 1:56 a.m. The evidence also showed that Schock submitted two breath samples that day, the first at 3:01 a.m. and the second at 3:07 a.m.

[¶ 21] North Dakota observed daylight saving time on Sunday, March 13, 2011. 15 U.S.C. § 260a (Supp. IV 2010). Under federal law, clocks "shall be advanced one hour" at 2:00 a.m. on the second Sunday of March. *Id.* The hearing officer took official notice of daylight saving time in his findings of fact even though there was no other evidence about daylight saving time during the hearing. Daylight saving time may be judicially noticed in North Dakota courts because "[c]ourts may take judicial notice of United States Statutes." *Ginter v. Ginter*, 63 N.W.2d 394, 398 (N.D.1954); *see* 15 U.S.C. § 260a (Supp. IV 2010).

[¶ 22] When North Dakota's observance of daylight saving time at 2:00 a.m. on March 13, 2011, was considered along with the evidence presented at the hearing and the information provided by the police officer on the report and notice form, common sense and experience permitted the hearing officer to conclude the breath test did not take over one hour to administer. The hearing officer was entitled to infer that the difference in time on the report and notice form between the beginning and the end of the breath test was the result of daylight saving time having taken effect at 2:00 a.m. on March 13, 2011, and the police officer's beginning the breath test at four minutes before 2:00 a.m. Had the police officer not administered the test over the

2:00 a.m. hour, Schock's breath test results would have shown a total test time of eleven minutes rather than one hour and eleven minutes.

[¶ 23] Although the hearing officer's written decision did not explain the effect that daylight saving time had on the timing of Schock's breath test in relation to when the police officer stopped Schock's vehicle, the decision states the hearing officer took official notice of daylight saving time under N.D.C.C. § 28–32–24(7). As a result, the hearing officer found the police officer administered the breath test within two hours of stopping Schock for a traffic violation because the clock on the Intoxilyzer 8000 sprang ahead one hour at 2:00 a.m. on March 13, 2011. A reasoning mind reasonably could have concluded the findings reached by the hearing officer were supported by the weight of the evidence.

[¶ 24] We conclude the hearing officer's finding that the police officer administered the breath test within two hours of Schock's driving a vehicle is supported by a preponderance of the evidence.

### B

[¶ 25] Schock argues the hearing officer failed to issue a decision "immediately" after the hearing under N.D.C.C. § 39–20–05(5), which provides, in part: "At the close of the hearing, the hearing officer shall notify the person of the hearing officer's findings of fact, conclusions of law, and decision based on the findings and conclusions and shall immediately deliver to the person a copy of the decision."

[¶ 26] The hearing officer conducted Schock's hearing on April 8, 2011, and his written decision is dated that day. The affidavit of mailing on the decision, however, states it was not mailed to Schock until April 11, 2011. It is unclear when the hearing officer made factual findings and conclusions of law, but the transcript from the April 8 hearing states the hearing officer made findings of fact and conclusions of law at the end of the hearing after a "recess." In the district court, the Department stipulated to Schock's claim that the hearing officer did not make any findings or conclusions at the end of the hearing.

[¶ 27] "The Department's authority to suspend a person's license is given by statute and is dependent upon the terms of the statute." *Aamodt*, 2004 ND 134, ¶ 15, 682 N.W.2d 308. The Department must meet the basic and mandatory provisions of the statute to have authority to suspend a person's driving privileges. *Schwind v. Dir., N.D. Department of Transportation*, 462 N.W.2d 147, 150 (N.D. 1990). "While the jurisdiction of an administrative agency is dependent upon the terms of a statute, these terms must be construed logically so as not to produce an absurd result." *Id.*

[¶ 28] Section 39–20–05(5), N.D.C.C., provides:

> At the close of the hearing, the hearing officer shall notify the person of the hearing officer's findings of fact, conclusions of law, and decision based on the findings and conclusions and *shall immediately deliver to the person a copy of the decision.* If the hearing officer does not find in favor of the person, the copy of the decision serves as the director's official notification to the person of the ... suspension ... of driving privileges in this state. If the hearing officer finds, based on a preponderance of the evidence, ... that the person had an alcohol concentration of at least eight one-hundredths of one percent by weight ..., *the hearing officer shall immediately take possession of the person's temporary operator's permit* issued under this chapter. If the hearing

officer does not find against the person, *the hearing officer shall sign, date, and mark on the person's permit an extension of driving privileges for the next twenty days and shall return the permit to the person.* The hearing officer shall report the findings, conclusions, and decisions to the director within ten days of the conclusion of the hearing. If the hearing officer has determined in favor of the person, the director shall return the person's operator's license by regular mail. . . .

(Emphasis added.)

[¶ 29] We have recognized that N.D.C.C. ch. 39–20 is intended to prevent individuals from driving under the influence of intoxicants. *Schwind,* 462 N.W.2d at 150.

[¶ 30] Schock argues the hearing officer backdated his decision on April 11, 2011, before mailing it to him, to make it appear as though the decision was made on April 8, 2011, the date of the hearing. Schock contends the hearing officer did not "immediately deliver" the decision to him under N.D.C.C. § 39–20–05(5) when the decision was sent three days after the hearing. Schock argues, as a result, the hearing officer did not have jurisdiction to suspend his driving privileges.

[¶ 31] The Department responds the hearing officer made factual findings and conclusions of law "later in the day following the Friday, April 8, 2011," hearing, and waited until April 11 to mail the decision. The Department argues the timeliness of the hearing officer's decision is not a basic and mandatory statutory provision required to establish jurisdiction. The Department also argues the timing of the hearing officer's decision did not prejudice Schock. The Department's argument acknowledges the hearing officer did not strictly comply with N.D.C.C. § 39–20–

05(5) when he mailed the decision to Schock three days after the hearing.

[¶ 32] We have addressed similar questions that include statutory provisions involving the Department. We have held the Department's failure to strictly comply with some statutory provisions deprived the Department of authority to suspend driving privileges. *See Jorgensen v. N.D. Department of Transportation,* 2005 ND 80, ¶ 13, 695 N.W.2d 212 (officer's failure to record the results of a chemical test on the report and notice form deprived the Department of authority to suspend driving privileges); *Aamodt,* 2004 ND 134, ¶¶ 23, 25–26, 682 N.W.2d 308 (officer's failure to list on the report and notice form the reasonable grounds to believe the driver was in physical control of a moving vehicle, as required by statute, deprived the Department of authority to suspend license); *Bosch v. Moore,* 517 N.W.2d 412, 413 (N.D.1994) (officer's failure to submit the results of all the blood-alcohol tests administered to the driver deprived the Department of authority to suspend driving privileges).

[¶ 33] Conversely, we have held the Department's failure to strictly comply with other statutory provisions did not deprive the Department of authority to suspend driving privileges when the statutory provision was not a basic and mandatory provision requiring compliance. *See Samdahl v. N.D. Department of Transportation Dir.,* 518 N.W.2d 714, 717 (N.D.1994) (driver suffered no prejudice when the Department gave him notice one month after his blood test of its intent to suspend his driving privileges, and the statutory provision requiring the giving of notice of intent to suspend a person's driver's license is not jurisdictional); *Erickson,* 507 N.W.2d at 540–41 (the Department could suspend driving privileges even though the driver's blood test results were not forwarded to

the Department within five days); *Schwind*, 462 N.W.2d at 151 (officer's failure to indicate on the report and notice form whether the driver's license was attached did not prejudice the driver because the driver had full notice and knowledge of the hearing).

[¶ 34] Strict compliance with some statutory provisions is not necessary for the Department to have authority to suspend a person's driving privileges. *See Samdahl*, 518 N.W.2d at 717; *Erickson*, 507 N.W.2d at 540–41; *Schwind*, 462 N.W.2d at 151. There are some details that "are not important in determining whether a driver's license can be suspended, and they are not considered by the Department when making its determination." *Aamodt*, 2004 ND 134, ¶ 22, 682 N.W.2d 308.

[¶ 35] By contrast, the statutory provisions at issue in *Jorgensen*, *Aamodt*, and *Bosch* were predicates to suspending a person's driving privileges, "and it is important to the Department that the provision[s] be followed." *Aamodt*, 2004 ND 134, ¶ 23, 682 N.W.2d 308. "When determining whether to suspend a person's driving privileges, the Department must determine whether there were reasonable grounds to believe the person was driving or was in actual physical control of a vehicle while under the influence of alcohol, whether the person was properly tested, and whether the person's blood-alcohol level exceeded the legal limit." *Id.* (citing N.D.C.C. § 39–20–05). The statutory provision requiring a hearing officer to "immediately deliver to the person a copy of the decision," however, does not involve requirements that are material to a hearing officer's decision to suspend a person's driving privileges and is not a predicate to the Department's decision.

[¶ 36] In this case, the Department admits the hearing officer did not comply with the statutory language requiring it to "immediately deliver" a copy of the decision to Schock at the close of the hearing. Although the requirement is not meaningless, it would produce an absurd result if we concluded the hearing officer's failure to strictly comply with a statutory provision that is not basic and mandatory precluded the Department from suspending Schock's driving privileges. *See Samdahl*, 518 N.W.2d at 717; *Erickson*, 507 N.W.2d at 540–41; *Schwind*, 462 N.W.2d at 151.

[¶ 37] The statutory language in N.D.C.C. § 39–20–05(5) is not basic and mandatory, because the hearing officer's action in mailing the decision three days after the administrative hearing did not affect whether there were reasonable grounds to believe Schock drove or was in actual physical control of a vehicle while under the influence of alcohol, whether the police officer properly tested Schock, or whether Schock's blood-alcohol level exceeded the legal limit. *See* N.D.C.C. § 39–20–05(2). The statutory provision to "immediately deliver" the decision to the driver in this case is more similar to the provisions involved in *Samdahl*, *Erickson*, and *Schwind* than the provisions involved in *Jorgensen*, *Aamodt*, and *Bosch*.

[¶ 38] We conclude the mailing of the hearing officer's decision to Schock three days after the administrative hearing did not deprive the Department of authority to suspend Schock's driving privileges, because the statutory provision requiring the decision to be "immediately delivered" is not basic and mandatory, and the hearing officer's action did not prejudice Schock.

[¶ 39] Although we conclude the hearing officer had authority to suspend Schock's driving privileges, the hearing officer did not strictly comply with N.D.C.C. § 39–20–05(5). The statutory provision requires the hearing officer to "immediately deliver" a copy of the decision to the

person and either "immediately take possession of the person's temporary operator's permit" if the hearing officer concludes the person violated the statute, or "mark on the person's permit an extension of driving privileges ... and shall return the permit to the person" if the person is found to have not violated the statute. N.D.C.C. § 39–20–05(5). Because the hearing officer did not inform Schock of his decision to suspend his driving privileges at the hearing and the hearing officer did not mail the decision until three days after the hearing, the hearing officer was unable to immediately take possession of Schock's temporary operator's permit. *See* N.D.C.C. § 39–20–05(5); *see also Landsiedel v. Dir., N.D. Department of Transportation*, 2009 ND 196, ¶ 12, 774 N.W.2d 645 (a hearing officer cannot unilaterally decide to conduct an administrative hearing by telephone under N.D.C.C. § 39–20–05, because the legislature intended for the hearing officer to "immediately deliver" the decision to the driver and the hearing officer must "immediately take possession of" or "sign, date, and mark" a driver's temporary operator's permit, which requires an in-person hearing).

■■■ [¶ 40] We are concerned about the hearing officer's failure to follow the statutory provision. "We have warned that conduct which is 'potentially prejudicial' to the accused, if 'commonplace,' may warrant reversal." *Madison v. N.D. Department of Transportation*, 503 N.W.2d 243, 246–47 (N.D.1993) (quoting *State v. Steffes*, 500 N.W.2d 608, 613–14 n. 5 (N.D. 1993)). Under *Madison*, when the interests of justice require, we reserve the right to reverse a hearing officer's decision that is not consistently and predictably applied in accordance with the law. *Id.* Although we conclude the hearing officer's conduct in this instance does not warrant reversal, we warn against the hearing officer's failure to follow the law becoming "commonplace."

## C

■■■ [¶ 41] Schock argues the hearing officer's decision is without substantial justification, entitling him to recover attorney's fees and costs. Section 28–32–50(1), N.D.C.C., requires a court to award a non-administrative agency party attorney's fees and costs *if the court rules in favor of that party* and it determines an administrative agency acted without substantial justification in the same civil judicial proceeding. We have interpreted "substantial justification" to mean "justified to a degree that could satisfy a reasonable person." *Peterson v. N.D. Department of Transportation*, 518 N.W.2d 690, 696 (N.D.1994) (quoting *Aggie Investments GP v. Pub. Serv. Comm'n*, 470 N.W.2d 805, 814 (N.D. 1991)).

[¶ 42] We conclude it is inappropriate for us to award Schock attorney's fees and costs under N.D.C.C. § 28–32–50(1) because he is not the prevailing party. *See Dunn v. N.D. Department of Transportation*, 2010 ND 41, ¶ 21, 779 N.W.2d 628; *see also Rojas v. Workforce Safety and Ins.*, 2006 ND 221, ¶ 14, 723 N.W.2d 403 ("N.D.C.C. § 28–32–50 requires the party to not only prevail but also requires proof that the agency acted without substantial justification.").

## III

[¶ 43] We affirm the district court's judgment.

[¶ 44] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER and MARY MUEHLEN MARING, JJ., concur.

DANIEL J. CROTHERS, J., concurs in the result.