2007 ND 32

**Tyler Allen WHITECALFE, Plaintiff and Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Defendant and Appellee**

**George Steven Berg, Plaintiff and Appellant,**

v.

**North Dakota Department of Transportation, Defendant and Appellee.**

**Nos. 20060202, 20060269.**

Supreme Court of North Dakota.

Feb. 28, 2007.

Chad R. McCabe, Vinje Law Firm, Bismarck, N.D., for plaintiffs and appellants.

Zachary Evan Pelham, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] In consolidated appeals, Tyler Whitecalfe appealed from a district court judgment affirming a North Dakota Department of Transportation hearing officer's decision to revoke his driving privileges for one year, and George Berg appealed from a district court judgment affirming a North Dakota Department of Transportation hearing officer's decision to revoke his driving privileges for four years. Whitecalfe and Berg argue the North Dakota Department of Transportation ("the Department") lacked authority to revoke their driving privileges and they claim they were denied due process. We affirm.

I

[¶ 2] Whitecalfe was arrested for driving under the influence of alcohol on February 3, 2006. A law enforcement officer advised Whitecalfe of the implied consent law and asked for a blood specimen to determine Whitecalfe's blood alcohol content. Whitecalfe refused to consent to the test. The law enforcement officer immediately took possession of Whitecalfe's driver's license, and issued Whitecalfe a twenty-five day temporary operator's permit on the Department's report and notice form. The report and notice form consists of an original and two copies. The original was sent to the Director of the Department, the law enforcement officer kept one copy, and the third copy ("the driver's copy") was given to Whitecalfe. The driver's copy of the report and notice informed Whitecalfe that his driving privileges could be revoked for up to four years because he refused a chemical test, and explained how

to request an administrative hearing to contest the proposed revocation. The Department's copy of the report and notice was identical to the driver's copy except the Department's copy did not include a section explaining the process for requesting a hearing, and instead included a section for the law enforcement officer's statement of probable cause explaining the officer's factual basis for believing Whitecalfe was in actual control of a motor vehicle while under the influence of alcohol.

[¶ 3] Whitecalfe timely requested an administrative hearing to contest the revocation. Before the hearing, Whitecalfe received a copy of the Department's report and notice, which included the officer's statement of probable cause. At the hearing, Whitecalfe argued the Department lacked jurisdiction and he claimed he was denied due process because the driver's copy of the report and notice did not contain the officer's statement of probable cause. An administrative hearing officer revoked Whitecalfe's driving privileges for one year, and the Burleigh County District Court affirmed the hearing officer's decision.

[¶ 4] In a separate incident, Berg was arrested for driving under the influence of alcohol on March 18, 2006. A law enforcement officer advised Berg of the implied consent law and requested a breath specimen for a chemical test. Berg refused to consent to the chemical test. Berg was given the driver's copy of the report and notice informing him that his license could be revoked for up to four years for refusing to consent to the chemical test and notifying him that he would not be issued a temporary operator's permit because his license was already suspended. The report and notice also informed Berg of the procedures to request an administrative hearing to contest the proposed revocation. The original report and notice was sent to the Director of the Department. The driver's copy of the report and notice was identical to the original sent to the Department except the driver's copy included the instructions for requesting a hearing to contest the revocation and did not contain the law enforcement officer's statement of probable cause.

[¶ 5] Berg timely requested an administrative hearing to challenge his revocation. Before the hearing, Berg received a copy of the Department's report and notice form containing the law enforcement officer's statement of probable cause. At the hearing, Berg argued the Department lacked jurisdiction and claimed he was denied due process because the driver's copy of the report and notice did not contain the officer's statement of probable cause. An administrative hearing officer revoked Berg's driving privileges for four years, and the Stark County District Court affirmed the hearing officer's decision.

II

[¶ 6] Whitecalfe and Berg argue the Department lacked authority to revoke their driving privileges and they were denied due process because the driver's copy of the report and notice did not contain the law enforcement officer's statement of probable cause. Relying on *Aamodt v. North Dakota Dep't of Transp.*, 2004 ND 134, 682 N.W.2d 308, and *Jorgensen v. North Dakota Dep't of Transp.*, 2005 ND 80, 695 N.W.2d 212, they claim due process and N.D.C.C. § 39–20–04 require the driver to be informed about the officer's factual basis for probable cause before deciding whether to request an administrative hearing to contest the revocation.

[¶ 7] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs our review of the Department's administrative suspension or revocation of a person's driver's license. *Aamodt*, 2004

ND 134, ¶ 12, 682 N.W.2d 308. Our review of appeals involving license suspensions or revocations is limited, and we give deference to the Department's findings. *Id.* We affirm the Department's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

### A

[¶ 8] Section 39–20–04, N.D.C.C., explains the procedures that must be followed before an individual's driving privileges may be revoked for refusal to submit to testing:

the law enforcement officer shall immediately take possession of the person's operator's license if it is then available and shall immediately issue to that person a temporary operator's permit, if the person then has valid operating privileges, extending driving privileges for the next twenty-five days or until earlier terminated by a decision of a hearing officer under section 39–20–05. The law enforcement officer shall sign and note the date on the temporary operator's permit. The temporary operator's permit serves as the director's official notification to the person of the director's intent to revoke driving privileges in this state and of the hearing procedures under this chapter. The director, upon the receipt of that person's operator's license and a certified written report of the law enforcement officer in the form required by the director, forwarded by the officer within five days after issuing the temporary operator's permit, showing that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01 or equivalent ordinance ... that the person was lawfully arrested if applicable, and that the person had refused to submit to the test or tests under section 39–20–01 or 39–20–14, shall revoke that person's license or permit to drive and any nonresident operating privilege for the appropriate period under this section ... subject to the opportunity for a prerevocation hearing and postrevocation review as provided in this chapter.

If the basic and mandatory provisions of this statute have not been met, the Department lacks authority to revoke an individual's driving privileges. *See Aamodt,* 2004 ND 134, ¶ 15, 682 N.W.2d 308. Interpretation of a statute is a question of law, which is fully reviewable on appeal. *Jorgensen,* 2005 ND 80, ¶ 7, 695 N.W.2d 212.

[¶ 9] Relying on *Aamodt* and *Jorgensen,* Whitecalfe and Berg claim the Department lacked authority to revoke their driving privileges because the driver's copy of the report and notice did not in-

clude the officer's statement of probable cause.

[¶ 10] In *Aamodt*, the driver was arrested for driving while under the influence of alcohol, submitted to a chemical test, and was given a copy of the report and notice informing him of the Department's intent to suspend his driving privileges. *Aamodt*, 2004 ND 134, ¶ 3, 682 N.W.2d 308. A law enforcement officer sent a copy of the report and notice to the Department, but that copy did not include the law enforcement officer's statement of reasonable grounds for believing the driver was in actual physical control of a vehicle while under the influence of alcohol. *Id.* at ¶ 15, 682 N.W.2d 308. We said the Department's authority to suspend a person's license was given by and dependant on the terms of the statute. *Id.* We held the statutory provision requiring the officer to show probable cause in the report and notice to the Department was a basic and mandatory provision, and therefore the Department lacked the authority to suspend the driver's driving privileges because the report and notice sent to the Department did not comply with statutory requirements. *Id.* at ¶ 26, 682 N.W.2d 308.

[¶ 11] In *Jorgensen*, the driver was arrested for driving while under the influence of alcohol and submitted to a chemical test. *Jorgensen*, 2005 ND 80, ¶ 2, 695 N.W.2d 212. The driver was given a copy of the report and notice informing him of the Department's intent to suspend his driving privileges. *Id.* at ¶ 4, 695 N.W.2d 212. A copy of the report and notice was also sent to the Department along with an analytical report for the driver's blood sample, but the law enforcement officer failed to record the results of the chemical test on the report and notice as required by statute. *Id.* at ¶ 4, 695 N.W.2d 212. We held the Department lacked the authority to suspend the driver's driving privileges

because the officer failed to record the chemical test results on the copy of the report and notice sent to the Department as required by statute. *Id.* at ¶ 13, 695 N.W.2d 212.

[¶ 12] The Department lacked authority in *Aamodt* and *Jorgensen* because of a failure to comply with statutory requirements for the reports sent to the Department. Here, N.D.C.C. § 39–20–04 requires a law enforcement officer to include in the report sent to the Department (1) "reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance"; (2) "the person was lawfully arrested"; and (3) "the person had refused to submit to the test or tests under section 39–20–01 or 39–20–14." For the Department to have the authority to revoke the individual's driving privileges the plain language of N.D.C.C. § 39–20–04 requires that information be included in the report sent to the Department. It does not require the information to be provided to the driver at that stage of the process.

[¶ 13] In this case, the copy of the report and notice sent to the Department contained all the information required by statute, including the officer's statement of probable cause. The driver's copy of the report and notice Whitecalfe and Berg received did not include the officer's statement of probable cause. However, we conclude that omission does not affect the Department's authority to revoke Whitecalfe's and Berg's driving privileges because N.D.C.C. § 39–20–04 only requires the driver receive a temporary operator's permit, which serves as notice of the Department's intent to revoke driving privileges and informs the driver of the hearing procedures. Section 39–20–04, N.D.C.C., does not require the officer's statement of probable cause be given to the driver at

that stage of the process in order for the Department to have authority to suspend or revoke an individual's driving privileges. We decline to read this requirement into the statute. Rather, N.D.C.C. § 39–20–04 specifies that the form of the report and notice is determined by the Department's rules, and the best remedy to change the information included in the driver's copy of the report and notice would be to request the Department amend the report and notice or if this fails, request the Legislature to amend the statute. We conclude the Department had authority to revoke Whitecalfe's and Berg's driving privileges.

B

[¶ 14] Although N.D.C.C. § 39–20–04 does not require the driver receive the information in the officer's written report, Whitecalfe and Berg claim due process does. Whitecalfe and Berg claim they were denied due process because they were not provided with the statement about the law enforcement officers' basis for probable cause before they had to request an administrative hearing to contest the revocation.

■■■■ [¶ 15] A court may decide the merits of a dispute only if the parties demonstrate they have standing to litigate the issues. *Kjolsrud v. MKB Mgmt. Corp.*, 2003 ND 144, ¶ 13, 669 N.W.2d 82. "Standing is the concept used 'to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court.' " *Nodak Mut. Ins. Co. v. Ward County Farm Bureau*, 2004 ND 60, ¶ 11, 676 N.W.2d 752 (quoting *Billey v. North Dakota Stockmen's Ass'n*, 1998 ND 120, ¶ 7, 579 N.W.2d 171). The litigant must have an interest, either in an individual or representative capacity, in the cause of an action, or a legal or equitable right, title, or interest in the subject matter of the controversy in order to invoke the jurisdiction of the court. *Nodak Mut. Ins. Co.*, at ¶ 11, 676 N.W.2d 752.

Whether a party has standing to litigate an issue is a question of law, which we review de novo. *Flatt v. Kantak*, 2004 ND 173, ¶ 38, 687 N.W.2d 208.

■■■■ [¶ 16] Standing requires a two-prong inquiry:

First, the plaintiff must have suffered some threatened or actual injury resulting from the putatively illegal action. Secondly, the asserted harm must not be a generalized grievance shared by all or a large class of citizens; the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties.

*Id.* (Citations omitted).

[¶ 17] Here, Whitecalfe and Berg arguably do not have standing. They contend they were denied due process because they did not know the law enforcement officers' factual basis for probable cause before they requested a hearing, and they claim that information is essential to decide whether to contest the Department's intended revocation or waive the right to a hearing. Their argument, however, presumably fails the first prong of the standing inquiry because they requested a hearing and did not suffer an injury as a result of not having the information.

■■■■ [¶ 18] Whitecalfe and Berg arguably also do not have third party standing. Under certain conditions, a third party may acquire standing to challenge the constitutionality of a statute or administrative procedure. *City of Fargo v. Stensland*, 492 N.W.2d 591, 594 (N.D. 1992). Third party standing exists when " 'there is a close relationship between the litigant's rights and the rights of a third party such that the litigant is fully, or very nearly, as effective a proponent of those rights as the third party[,]' " or "where individuals not party to a particular suit

stand to lose by its outcome and yet have no effective avenue of preserving their rights[,]" or "where speech protected by the First Amendment is infringed upon by the challenged statute." *Id.* While Whitecalfe and Berg claim their due process issue could never be brought before a court unless an individual contests the Department's decision by requesting an administrative hearing, we conclude their argument is unpersuasive. A party with standing could bring this issue before the court in a declaratory judgment action after failing to request a hearing.

 [¶ 19] Although Whitecalfe and Berg arguably do not have standing to raise the due process issue, their claims are nevertheless meritless under the facts of this case. Whitecalfe and Berg claim they were denied due process because they did not have the law enforcement officer's probable cause statement before they were required to decide whether to request a hearing to contest the revocation, and they contend *Jorgensen* supports their claim. In *Jorgensen,* before holding the Department did not have the authority to suspend a person's driving privileges because the report and notice sent to the Department failed to include the chemical test results, we said it was important the driver know what the officer was relying on before deciding whether to request an administrative hearing to contest the suspension:

> Section 39–20–05(1), N.D.C.C., gives a driver only a short time—ten days—after the issuance of a temporary operator's permit within which to request a hearing to challenge the suspension of his or her driving privileges. Thus, in determining whether to request a hearing, it is important that a driver facing the loss of driving privileges be able to quickly, conveniently, and certainly know what the officer is relying on. That information will be more quickly, conveniently, and certainly conveyed to the driver by inserting in the appropriate blank space on the report and notice form the results of the test than by giving the driver a copy of the analytical report of the analysis of the blood sample tested, which may well be confusing to one unacquainted with such documents.

*Jorgensen,* 2005 ND 80, ¶ 13, 695 N.W.2d 212. But those statements do not control the due process issue asserted in this case.

 [¶ 20] Unlike some other legal rules, due process, " 'is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). Due process is flexible and must be considered on a case-by-case basis. *Wahl v. Morton County Soc. Serv.,* 1998 ND 48, ¶ 6, 574 N.W.2d 859. When deciding a due process claim, we consider whether a constitutionally protected property or liberty interest is at stake and, if so, whether minimum procedural due process requirements were met. *Morrell v. North Dakota Dept. of Transp.,* 1999 ND 140, ¶ 8, 598 N.W.2d 111. A driver's license is a protectable property interest, which may not be suspended or revoked without due process, and therefore a driver is entitled to procedural due process in an administrative hearing to revoke or suspend his license. *Id.* Procedural due process is analyzed by applying a balancing test, considering three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved

and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*In re S.A.L.,* 2002 ND 178, ¶ 11, 652 N.W.2d 912 (quoting *Mathews,* at 335, 96 S.Ct. 893).

[¶ 21] In this case, the risk of an erroneous deprivation of a individual's driving privileges is minimal under the current procedures, and the value of adding the probable cause statement to the driver's copy of the report and notice is very small. The current procedures for contesting the revocation require a driver to request a hearing, within ten days from the date the report and notice was issued, by mailing a written request to the Department. After a request for a hearing is made, a hearing is scheduled and the driver is sent a copy of the Department's report and notice which includes the officer's statement of probable cause. Under the current procedures, a driver's cost to request a hearing is minimal, and after the driver receives the Department's copy of the report and notice, the driver may choose to contest the revocation or may cancel the hearing. If the driver wants to know what information the law enforcement officer relied on for the stop and arrest before the driver requests an administrative hearing, the driver is not precluded from asking the Department for a copy of the original report and notice including the officer's statement of probable cause. In sum, the driver loses nothing by requesting a hearing.

 [¶ 22] Due process is an issue of time, place, and circumstances. *See Mathews,* 424 U.S. at 334, 96 S.Ct. 893. Here, the critical time is the hearing, and before the hearing, the driver must have the necessary information to adequately prepare for the hearing, including the information contained in the Department's copy of the report and notice. "Due process requires a participant in an adminis-

trative proceeding be given notice of the general nature of the questions to be heard, and an opportunity to prepare and be heard on those questions." *Morrell,* 1999 ND 140, ¶ 9, 598 N.W.2d 111. A party has adequate notice when he has been informed of the nature of the proceedings so there is no unfair surprise. *Id.* A party challenging an agency action must also be adequately informed in advance about the questions to be addressed at the hearing so the party has a sufficient opportunity to prepare. *Id.* Under the current license revocation procedures, those requirements are met. We conclude the current administrative procedures do not deny a driver due process.

 [¶ 23] Whitecalfe and Berg had adequate notice of the nature of the hearing and were adequately informed in advance about the issues to be addressed at the hearing. Both parties received a copy of the report and notice advising them of their right to request a hearing to contest the revocation. The form specified that their licenses would be revoked because they were arrested for driving under the influence and refused to submit to chemical testing. While the driver's copy of the report and notice Whitecalfe and Berg initially received did not include the officer's statement of probable cause, they each received a copy of the Department's report and notice, including the probable cause statement, before the administrative hearing. Both parties were notified of the nature of the proceedings and had sufficient time to prepare. We conclude Whitecalfe and Berg were not denied due process.

### III

[¶ 24] We affirm.

[¶ 25] DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., concur.

KAPSNER, Justice, concurring in the result.

[¶ 26] I concur in the result, but disagree with the majority opinion to the extent that it suggests Whitecalfe and Berg arguably do not have standing.

[¶ 27] Standing is a threshold issue to determine whether the litigant is entitled to have the court decide the merits of the dispute. *See Flatt v. Kantak,* 2004 ND 173, ¶ 38, 687 N.W.2d 208 (quoting *State v. Carpenter,* 301 N.W.2d 106, 107 (N.D. 1980)); *Nodak Mut. Ins. Co. v. Ward County Farm Bureau,* 2004 ND 60, ¶ 11, 676 N.W.2d 752 (quoting *Rebel v. Nodak Mut. Ins. Co.,* 1998 ND 194, ¶ 8, 585 N.W.2d 811). The ultimate decision on the merits is generally not a factor when addressing whether the court has jurisdiction to hear it. *See, e.g., Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 88–90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). As the majority correctly noted, standing requires a two-pronged analysis. *See Flatt,* at ¶ 38, 687 N.W.2d 208. " 'First, the plaintiff must have suffered some threatened or actual injury resulting from the putatively illegal action.' " *Id.; accord Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Second, the harm must not be a generalized grievance. *Flatt,* at ¶ 38, 687 N.W.2d 208. The majority concludes Whitecalfe and Berg may not have standing because they did not suffer a due process injury as the result of not having the probable cause information before requesting a hearing because they requested a hearing. *See* majority opinion, at ¶ 17. The majority misconstrues the standing test.

[¶ 28] As this Court stated in *Carpenter,* 301 N.W.2d at 107:

Without the limitation of the standing requirements, the courts would be called upon to decide purely abstract ques-

tions. As an aspect of justiciability, the standing requirement focuses upon whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to justify exercise of the court's remedial powers on his behalf.

[¶ 29] For Whitecalfe and Berg, the issue of whether their due process rights were violated is not an abstract question. Whitecalfe and Berg argue due process requires that they receive the officer's probable cause statement *before* they have to decide whether to ask for a hearing. Whitecalfe and Berg did not get the probable cause statement before making the decision to request a hearing. Therefore, if due process did require the State to provide them with the probable cause statement before they made the decision to request a hearing, they were injured. Our holding that due process does not require the State to provide individuals with the officer's probable cause statement before they make a decision, so long as the information is provided sufficiently in advance of the hearing, does not eliminate Whitecalfe and Berg's standing to raise the due process issue.

[¶ 30] Carol Ronning Kapsner

CROTHERS, Justice, concurring in the result.

[¶ 31] I concur in the result, but disagree with the majority to the extent they hold Whitecalfe and Berg "arguably have standing," and I disagree with Justice Kapsner that Whitecalfe and Berg do have standing.

[¶ 32] The narrow due process issue raised by Whitecalfe and Berg is whether their rights were impinged because they did not receive the officer's probable cause statement before deciding to request a hearing. Whitecalfe and Berg actually filed their requests for hearing before receiving the statement. Therefore, White-

calfe and Berg have no actual injury, have no stake in the outcome of that dispute, and have no standing to raise the issue.

[¶ 33] MARY MUEHLEN MARING, J., concurs.