# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 235

In the Interest of N.L., Jr., minor child

| | |
|---|---|
| Grand Forks County Human Service Zone, | Petitioner and Appellee |
| v. | |
| N.L., Jr., Child; A.H., Mother; | Respondents |
| and | |
| N.L., Sr.; | Respondent and Appellant |

### No. 20220311

In the Interest of J.L., minor child

| | |
|---|---|
| Grand Forks County Human Service Zone, | Petitioner and Appellee |
| v. | |
| J.L., Child; A.H., Mother; | Respondents and Appellees |
| and | |
| N.L., Sr.; | Respondent and Appellant |

### No. 20220312

Appeal from the Juvenile Court of Grand Forks County, Northeast Central Judicial District, the Honorable M. Jason McCarthy, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Zachary Ista, Assistant State's Attorney, Grand Forks, ND, for petitioner and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for respondent and appellant.

**Crothers, Justice.**

[¶1] N.L., Sr. appeals from the juvenile court's order terminating his parental rights. N.L., Sr. argues the court lacked subject matter jurisdiction to terminate his parental rights, the Grand Forks County Human Service Zone (GFCHSZ) lacked standing, and the court erred in finding GFCHSZ met the requirements for termination of parental rights under the federal Indian Child Welfare Act (ICWA) and N.D.C.C. § 27-20.3-19. We affirm.

I

[¶2] A.H. and N.L., Sr. are the biological mother and father of N.L., Jr., born in 2015 and J.L., born in 2018. On August 9, 2020, N.L. and J.L. were removed from their home after law enforcement performed a welfare check. After the removal GFCHSZ was contacted for placement of the children. That same day GFCHSZ sought and received an emergency temporary custody order for the children. On November 19, 2020, the juvenile court granted full custody to GFCHSZ for up to 12 months beginning August 9, 2020. On August 19, 2021, the court extended full custody to GFCHSZ for no more than 12 months beginning August 2, 2021.

[¶3] On March 4, 2022, GFCHSZ filed a petition for involuntary termination of parental rights based on the children's need for protection. On July 6, 2022, the custody order was extended until trial on August 31, 2022. At the end of trial the juvenile court requested the parties submit proposed findings of fact and conclusions of law by September 14, 2022. On September 15, 2022, the court issued its findings of fact and an order terminating parental rights.

II

[¶4] N.L., Sr. argues the juvenile court did not have subject matter jurisdiction to grant the termination of parental rights. He claims the juvenile court lost jurisdiction over the case when the order finding the children were in need of protection expired on August 31, 2022, and it did not regain subject

matter jurisdiction before issuing its termination of parental rights order on September 15, 2022. He acknowledges a disposition order may be extended under circumstances provided in N.D.C.C. § 27-20.3-26(4). But, he claims, the absence of a disposition order under N.D.C.C. § 27-20.3-15 requires the conclusion that the State cannot prove under N.D.C.C. § 27-20.3-20(1)(c) that the children remain in need of protection. Under his theory, the lack of a then-current dispositional order finding a child is in need of protection equates to the juvenile court lacking subject matter jurisdiction to adjudicate the termination of parental rights. In support of his argument, N.L., Sr. cites N.D.C.C. §§ 27-20.3-02; 27-20.2-03; 27-20.3-20(1)(c) and *Eastburn v. B.E.*, 545 N.W.2d 767, 770 (N.D. 1996). Each basis of legal support cited by N.L., Sr. will be addressed in turn.

[¶5]   Section 27-20.3-02, N.D.C.C., provides, "Jurisdiction as set forth in section 27-20.2-03 is applicable to this chapter." Under N.D.C.C. § 27-20.2-03, "The juvenile court has exclusive original jurisdiction of the following proceedings," including "[p]roceedings for the termination of parental rights except if a part of an adoption proceeding under chapter 27-20.3."

[¶6]   Under N.D.C.C. § 27-20.3-20(1)(c), the juvenile court "may terminate the parental rights of a parent with respect to the parent's child if:

> c. The child is in need of protection and the court finds:
> (1) The conditions and causes of the need for protection are likely to continue or will not be remedied and for that reason the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; or
> (2) The child has been in foster care, in the care, custody, and control of the department or human service zone for at least four hundred fifty out of the previous six hundred sixty nights."

A "Child in need of protection" means a child who:

> "a. Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the need for services or protection is not due primarily to the lack

2

of financial means of the child's parents, guardian, or other custodian;

b. Has been placed for care or adoption in violation of law;

c. Has been abandoned by the child's parents, guardian, or other custodian;

d. Is without proper parental care, control, or education as required by law, or other care and control necessary for the child's well-being because of the physical, mental, emotional, or other illness or disability of the child's parent or parents, and that such lack of care is not due to a willful act of commission or act of omission by the child's parents, and care is requested by a parent;

e. Is in need of treatment and whose parents, guardian, or other custodian have refused to participate in treatment as ordered by the juvenile court;

f. Was subject to prenatal exposure to chronic or severe use of alcohol or any controlled substance as defined in chapter 19-03.1 in a manner not lawfully prescribed by a practitioner;

g. Is present in an environment subjecting the child to exposure to a controlled substance, chemical substance, or drug paraphernalia as prohibited by section 19-03.1-22.2; or

h. Is a victim of human trafficking as defined in title 12.1."

N.D.C.C. § 27-20.3-01(5).

[¶7] A dispositional order containing a finding a child is in need of protection is not the exclusive way to prove that fact during a termination of parental rights proceeding. Even if it was, the defect would be one of proof and not jurisdiction because nothing in N.D.C.C. Ch. 27-20.3 requires that a disposition order be in place before termination of parental rights can be sought.

[¶8] We addressed a similar argument in *Interest of T.H.*, 2012 ND 254, 825 N.W.2d 844. There, a child's father argued under prior law that the failure to extend an order of disposition deprived the juvenile court of jurisdiction to hold a subsequent hearing. *Id.* at ¶ 6. We rejected the argument, stating:

"A court has jurisdiction to issue a valid order if it has jurisdiction over the parties and the subject matter of the action. The juvenile court had jurisdiction over the parties and had subject matter jurisdiction because it 'had the "power to hear and determine the general subject involved in the action."' It is well

3

settled that 'unless a statute imposing a time limit declares that the time limit is jurisdictional, we will not treat the time limit as affecting the jurisdiction of a court or administrative agency.' Section 27-20-36, N.D.C.C., does not state that the time limit for a hearing is jurisdictional. The statutory violation did not divest the juvenile court of jurisdiction to hold the hearing and its permanency order extending T.H.'s placement is not void."

*Id.* at ¶ 7 (cleaned up).

[¶9]   N.L., Sr. also cites *Eastburn v. B.E.*, 545 N.W.2d 767, 770 (N.D. 1996) for support of his argument the juvenile court lost jurisdiction when the custody order lapsed. *Eastburn* was a proceeding under the former law where this Court affirmed a juvenile court order continuing a state social services agency's care, custody, and control of a mother's children for 18 months. There, we stated "before extending a disposition order, the juvenile court must find that the child remains 'deprived' as defined by section 27-20-02(5), N.D.C.C., because the court would lack jurisdiction over the child under section 27-20-03(1)(a), N.D.C.C., without such a finding." *Id.*

[¶10] While true *Eastburn* addressed "jurisdiction over the child," this Court did not take the next step suggested by N.L., Sr. and hold a valid deprivation order was required before the juvenile court could terminate parental rights. Rather, *Eastburn* only addressed extending a deprivation order and, in that context, we made the unremarkable holding that the juvenile court did not have jurisdiction over a child who was not alleged to be deprived. As explained in another case, "[u]nder N.D.C.C. § 27-20-03(1)(a), the juvenile court has exclusive jurisdiction over 'proceedings in which a child is alleged to be . . . deprived.'" *Interest of J.B.*, 2018 ND 200, ¶ 5, 916 N.W.2d 787.

[¶11] "When jurisdictional facts are not disputed, the issue of subject matter jurisdiction is a question of law, which we review de novo." *Sholy v. Cass County Commission*, 2022 ND 164, ¶ 9, 980 N.W.2d 49. Here, GFCHSZ concedes the disposition and custody order briefly lapsed between the end of trial and issuance of the termination order. However, the presence of that gap does not support a conclusion the juvenile court did not have subject matter jurisdiction to terminate N.L., Sr.'s parental rights. Rather, the juvenile court

explicitly had jurisdiction over the proceeding. *See* N.D.C.C. § 27-20.3-02 and 27-20.2-03. Under N.D.C.C. § 27-20.3-20(1)(c) the State was required to prove, and the juvenile court was required to find, certain facts, including that the children were in need of protection. Nothing in N.D.C.C. chapter 27-23.3 requires a predicate order of disposition. Instead, N.D.C.C. § 27-20.3-20(1)(c) simply imposes a proof requirement—that the children are in need of protection. Therefore, the juvenile court had subject matter jurisdiction to decide whether to terminate N.L., Sr.'s parental rights, and retained authority to decide GFCHSZ's petition after the disposition order expired.

## III

[¶12] N.L., Sr. argues GFCHSZ lost standing to bring a petition for termination of parental rights after the order giving it custody of the children expired on August 31, 2022.

[¶13] "Standing is the concept used 'to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court.'" *Whitecalfe v. North Dakota Dept. of Transp.*, 2007 ND 32, ¶ 15, 727 N.W.2d 779. "The litigant must have an interest, either in an individual or representative capacity, in the cause of an action, or a legal or equitable right, title, or interest in the subject matter of the controversy in order to invoke the jurisdiction of the court." *Id.* "Whether a party has standing to litigate an issue is a question of law, which we review de novo." *Id.* North Dakota law addresses who may petition for termination of parental rights:

> "A petition for termination of parental rights must be prepared, filed, and served upon the parties by the state's attorney. A petition may also be prepared by *any other person that is not the court*, including a law enforcement officer, *who has knowledge of the facts alleged or is informed and believes that they are true*. A petition prepared by any person other than a state's attorney may not be filed unless the director or the court has determined the filing of the petition is in the best interest of the public and the child."

N.D.C.C. § 27-20.3-21(2) (emphasis added).

5

[¶14] GFCSHZ's custody order expired between the end of trial and the issuance of the termination order. However, GFCSHZ had custody of the children when the petition for termination was filed on March 4, 2022. The petition was prepared by the state's attorney on behalf of GFCHSZ, in accord with N.D.C.C. § 27-20.3-21(2). By virtue of the custody order, GFCHSZ had an interest in a representative capacity, meaning they had standing to maintain this action through trial. Due to the nature of these proceedings, and the fact no other person or entity had legal custody of the children between trial and when the juvenile court ordered termination of parental rights, we conclude GFCHSZ continued to have a sufficient interest in the children to insure a justiciable controversy was presented to the court. *See Whitecalfe*, 2007 ND 32, ¶ 15.

IV

[¶15]  N.L., Sr. argues the juvenile court erred in finding GFCSHZ made active efforts to prevent the breakup of an Indian family and the efforts were unsuccessful.

[¶16] The Indian Child Welfare Act provides:

> "No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

25 U.S.C.A. § 1912(f).

[¶17] IWCA, 25 U.S.C.A. § 1912(d), also requires that a party seeking to terminate parental rights to an Indian child show evidence active efforts have been made to provide remedial services and rehabilitative programs to prevent the breakup of the Indian family, and those efforts were unsuccessful.

[¶18] The North Dakota legislature codified these federal requirements. N.D.C.C § 27-20.3-19. Under N.D.C.C § 27-20.3-19(1)(a), "'[a]ctive efforts' means affirmative, active, thorough, and timely efforts intended primarily to

6

maintain or reunite an Indian family and that these efforts have proved unsuccessful." Examples of active efforts include conducting assessments of the family, identifying services for the parents, involving the child's tribe, connecting the child to extended family members, keeping siblings together when possible, supporting paternal visitation, and helping parents use available community resources. N.D.C.C § 27-20.3-19(1)(a)(1-11); 25 CFR § 23.2.

[¶19] We review the juvenile court's factual findings for termination of parental rights under the clearly erroneous standard. *Interest of A.C.*, 2022 ND 123, ¶ 5, 975 N.W.2d 567. "Under the clearly erroneous standard of review, we affirm the decision of the juvenile court unless it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.*

[¶20] N.L. and J.L. are members of the Spirit Lake Indian tribe through one or both parents. Therefore, the IWCA and North Dakota's Indian Child Welfare Act apply to this proceeding.

[¶21] The juvenile court heard testimony from two GFCSHZ employees who worked closely with the children, and from a qualified expert witness appointed by the Spirit Lake Indian tribe as required by law. *See* 25 U.S.C.A. § 1912(f); N.D.C.C § 27-20.3-19(5). The witnesses testified that continued custody of the children by the parents or an Indian custodian was likely to result in serious emotional or physical damage to the children. *See* 25 U.S.C.A. § 1912(f); N.D.C.C § 27-20.3-19(5). The testimony included: the family's history with child protective service including exposure to domestic violence, exposure to drugs and alcohol, and insufficient parenting; the children testing positive for marijuana, amphetamines, and methamphetamines after they were removed from the home; a police search of the home finding multiple dangerous and child accessible items including scissors, a dagger, nails, gabapentin pills, and garbage; how the parents cannot maintain a stable home environment; how both children require high care for specific needs and the parents have not shown they can provide that care.

[¶22] The witnesses provided examples of active efforts made to prevent the breakup of the Indian family. *See* 25 U.S.C.A. § 1912(d); N.D.C.C § 27-20.3-19(2). The efforts included services through law enforcement, child protection services, family preservation services, foster care case management, recommendations for alcohol and drug evaluation and treatment for both parents, mental health services for both parents, random drug screenings, medical care, dental care, vision services, early intervention services, speech therapy for the children, and supervised parental visits. The witnesses testified why these efforts were unsuccessful. The expert witness testified the Spirit Lake Indian tribe remained active in this case, and agreed with GFCSHZ's permanent plan for the children—including termination of N.L., Sr.'s parental rights.

[¶23] The juvenile court's decision did not rely on erroneous views of the law. The decision was based on evidence before the court. Therefore, the juvenile court did not err in finding that GFCSHZ made active efforts to prevent the breakup of an Indian family and that the efforts were unsuccessful.

V

[¶24] We affirm the juvenile court's order terminating parental rights.

[¶25] Jon J. Jensen, C.J.
    Gerald W. VandeWalle
    Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte